UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ARTURO COLLAZO, | ) | Case No. 12 B 44342 |
| Debtor. | ) | |
| | ) | |
| ROBERT J. SIRAGUSA, individually and as | ) | |
| Trustee for the ROBERT J. SIRAGUSA, MD | ) | Adversary No. 13 A 00216 |
| EMPLOYEE BENEFIT TRUST (formerly, | ) | |
| Dermatology Associates of Bay County, P.A., | ) | Honorable Deborah L. Thorne |
| Defined Benefit Trust); DANA SIRAGUSA; | ) | |
| JULIE SIRAGUSA; and ROBERT JOSEPH | ) | |
| SIRAGUSA, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ARTURO COLLAZO, | ) | |
| Defendant. | ) | |

**Proposed Findings of Fact & Conclusions of Law**

**Introduction & Procedural Background**

This matter comes before the court upon remand from the Seventh Circuit Court of

Appeals. *Siragusa v. Collazo (In re Collazo)*, 817 F.3d 1047, 1054 (7th Cir. 2016). On remand,

this court was directed to answer two questions. *See S & P, Inc. v. Pfeifer*, 189 B.R. 173, 180

(N.D. Ind. 1995) (discussing the scope of a mandate from the Court of Appeals), *aff'd*, 78 F.3d

587 (7th Cir. 1996).

First, does Dana Siragusa ("Dana") have an actual fraud claim against Arturo Collazo

("Collazo") under section 523(a)(2)(A) of the Bankruptcy Code? *Collazo*, 817 F.3d at 1053

("Should the [Supreme] Court agree with our analysis in the *McClellan* case, Dana will be

entitled on remand to resuscitate her fraud claim."); *see also Husky Int'l Elecs., Inc. v. Ritz*, 136

S. Ct. 1581, 1590 (2016) (agreeing with the analysis in the *McClellan* case); *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000).

Second, what is the amount of the already-found-to-be nondischargeable debt that Collazo owes to Dana and Robert Joseph Siragusa ("Robert Joseph")? *Collazo*, 817 F.3d at 1053 ("But the judge had, and on remand should consider, two other alternatives, because the entry of a monetary judgment after a finding of nondischargeability is 'related to [a] case[ ] under title 11.'"); *see also Siragusa v. Collazo (In re Collazo)*, No. 12 B 44342, 2014 WL 866075, at *11 ("Relying on Collazo's false representation, Dana and Robert Joseph transferred $200,000 to a Collazo-owned LLC for his benefit, and none of this has been returned to them. Therefore, there is a debt owed to Dana and Robert Joseph, and it was, in fact, caused by Collazo's false representation."); *Collazo*, 817 F.3d at 1049 ("The one claim the bankruptcy and district judges held not to be discharged is Collazo's debt to two of Dr. Siragusa's children, Dana and Robert Joseph, concerning a development project in Arizona. Collazo has not appealed that ruling."). That debt is based on a $200,000 loan that Dana and Robert Joseph made to a Collazo-owned LLC in connection with Collazo's proposed Arizona project. *See Collazo*, No. 12 B 44342, 2014 WL 866075, at *11.

Prior to the scheduled trial on Dana's actual fraud claim (the first question described above), the parties settled. This settlement happened in late January / early February of 2019 and has not yet been reflected on the docket. That left only the issue as to the amount of the nondischargeable debt owed to Dana and Robert Joseph (the second question described above). These proposed findings of fact and conclusions of law address the proper amount of that debt.

2

## Factual Background

In November of 2005, Dana and Robert Joseph loaned $200,000 to CG Development, an entity owned and controlled by Collazo and his business partner. *Collazo*, No. 12 B 44342, 2014 WL 866075, at *1, *4. As established by the unrebutted declarations submitted, Robert Joseph loaned $150,000, while Dana loaned $50,000. *See* Docket Nos. 184, 191, 194. Collazo induced the CG Development loan by way of a false statement, namely a statement that *other loans* relating to projects in Chicago would be repaid within 30 to 60 days from the proceeds of the sale of certain condo units. *Collazo*, No. 12 B 44342, 2014 WL 866075, at *10. That statement was false at the time it was made because, among other things, the condo units were owned by entities owing no obligation to the Siragusas, and the units were also encumbered by mortgages. *Id.* CG Development did not pay back any part of the fraudulently induced $200,000 loan. *Id.* at *11. The bankruptcy court's conclusion that this fraud-based debt owed to Dana and Robert Joseph is nondischargeable under section 523(a)(2)(A) was never disturbed on appeal. *Collazo*, 817 F.3d at 1049. The only lingering question is the debt's amount.

## Jurisdiction & Authority

Jurisdiction to hear this matter exists. *See* 28 U.S.C. §§ 1334(b), 157(a), N.D. Ill. L.R. 40.3.1(a); *see also Collazo*, 817 F.3d at 1053 (holding that "related to" jurisdiction exists under 28 U.S.C. § 1334(b)). In light of this court's limited mandate on remand, it will submit proposed findings of fact and conclusions of law to the District Court for that court to review *de novo*. *See Collazo*, 817 F.3d at 1053–54 (outlining the "two other alternatives" for the bankruptcy judge on remand); Fed. R. Bankr. P. 9033; *see also* 28 U.S.C. § 157(c)(1); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014).[1]

---

[1] Collazo withheld his consent to a final adjudication of the amount of the debt by this court. *See* 28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015); *Collazo*, 817 F.3d at

**Discussion**

The total amount of the debt owed is purely a question of substantive nonbankruptcy law,

here Illinois law.[2] *See, e.g., In re Cupit*, 514 B.R. 42, 56–57 (Bankr. D. Colo. 2014), *aff'd*, 541

B.R. 739 (D. Colo. 2015); *In re Dawson*, 507 B.R. 348, 357 (Bankr. D. Utah 2014); *In re*

*Johnson*, 485 B.R. 642, 647 (Bankr. D. Colo. 2013); *see also Collazo*, 817 F.3d at 1051–52

(noting that the establishment of the debt itself is governed by state law); *In re Roland*, 294 B.R.

244, 249 (Bankr. S.D.N.Y. 2003).[3]

I.    **The Principal Amount of Damages**

The substantive nonbankruptcy law debt owed here is based on common law fraud, not

on a contract. *See, e.g., Weatherford v. Fishback*, 4 Ill. 170, 173–74 (1841) ("[F]raud or deceit,

accompanied with damage, is a meritorious cause of action."); *see also Collazo*, 817 F.3d at

1051–52 (noting that the debts owed to the Siragusas are based on fraud and not on any

applicable contracts); *Collazo*, No. 12 B 44342, 2014 WL 866075, at *7 ("It is true that the

Siragusas cannot assert Collazo's liability on the basis of the contractual obligation of the

borrower-LLCs without proving the necessity for piercing the LLC veil. However, the Siragusas

and the Employee Trust *assert common law fraud claims* based on specific representations made

by Collazo.") (emphasis added). Where one fraudulently induces another to lend money to

another, the damages to the lender are equal to the amount of money lent with interest thereon

_____

1053–54 (instructing the bankruptcy court to see if the parties would consent to the adjudication of the
state law claim's amount).

[2] Neither party has argued or even implied that a different state's law applies to the calculation of the
amount of the fraud debt.

[3] The debt's dischargeability is, of course, a question of federal bankruptcy law. As indicated above, that
question has already been answered. *Collazo*, No. 12 B 44342, 2014 WL 866075, at *11 ("Because Dana
and Robert Joseph have met the burden of establishing the elements of 11 U.S.C. § 523(a)(2)(A), the debt
arising from the Arizona loan is nondischargeable."); *see also Cohen v. de la Cruz*, 523 U.S. 213 (1998)
(holding that the amount of nondischargeable debt under section 523(a)(2)(A) may include even punitive
damages awarded as a result of the defendant's fraud).

4

from the time of the loan until the time of judgment. *Horne v. Walton*, 7 N.E. 100, 101 (Ill. 1886); *Commercial Nat. Bank of Peoria v. Fed. Deposit Ins. Corp.*, 476 N.E.2d 809, 815 (Ill. App. Ct. 1985) ("[T]he measure of damages for a fraudulently induced loan [is] the sum of money lent plus interest for the time that plaintiff was deprived of possession."); *accord Black v. First Fed. Sav. & Loan Ass'n of Fargo, N. Dakota, F.A.*, 830 P.2d 1103, 1114 (Colo. App. 1992).

The actual amount of money lent here was $200,000, and there is no doubt in this case that the Siragusas are out that amount of money. Not a cent was ever repaid, and the note matured over 10 years ago. *Collazo*, No. 12 B 44342, 2014 WL 866075, at *11 ("Relying on Collazo's false representation, Dana and Robert Joseph transferred $200,000 to a Collazo-owned LLC for his benefit, *and none of this has been returned to them*.") (emphasis added). The Siragusas are therefore entitled to at least $200,000 from Collazo.

## II.   Prejudgment Interest

There is also the matter of interest. The court can only award interest in limited circumstances, however.

### A.  An Award of Legal Prejudgment Interest under an Applicable Contract or Statute?

First, the court may award interest if an agreement or statute provides for interest. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 412 (Ill. 2006). Here, there is an agreement, but it is between the Siragusas and CG Development, not between the Siragusas and Collazo. No attempt has been made to hold Collazo personally liable for CG Development's contractual obligations, such as by piercing the corporate veil or by asserting an alter ego theory. *Collazo*, 817 F.3d at 1051–52; *Collazo*, No. 12 B 44342, 2014 WL 866075, at *7. Interest therefore can be awarded here neither on the basis of, nor at the rate set in, the CG Development note. *See Schwitters v. Springer*, 86 N.E. 102, 103 (Ill. 1908) (noting that it was error to instruct

5

the jury to look to the note rate of interest where the defendant was not liable on the notes and was only liable to the plaintiff based on fraud and deceit); *accord In re Weaver*, 579 B.R. 865, 907–08 & n.19 (Bankr. D. Colo. 2018).

A statute exists, however, that has been held to cover this type of case (a fraud case where the damages are liquidated and easily ascertainable). 815 ILCS 205/2; *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 761 (Ill. App. Ct. 2013); *Obermaier v. Obermaier*, 470 N.E.2d 1047, 1054 (Ill. App. Ct. 1984); *Forrester v. State Bank of E. Moline*, 363 N.E.2d 904, 909–10 (Ill. App. Ct. 1977); *Pfeffer v. Farmers State Bank of Schaumburg*, 263 Ill. App. 360, 373 (1931). The statute provides for interest at 5% *per annum. See* 815 ILCS 205/2.

Because there is no applicable contract between the parties,[4] this statute alone provides the basis for an award of prejudgment interest in this case *unless* Collazo is correct that this court should award equitable prejudgment interest at some other rate. It is to that question that the court now turns.

**B. An Award of Equitable Prejudgment Interest?**

Collazo argues that the correct interest rate to use is one based on alternative investments that could have been made with the money. Since this argument rests neither on statute nor on contract, Collazo must be arguing for the court to make an equitable award of prejudgment interest. *See Tri-G*, 856 N.E.2d at 412. The court can only make an equitable award of interest on a claim that is substantively equitable, or one that sounds in equity. *See id.* (looking to the "substance of the claim"); *Cont'l Cas. Co. v. Commonwealth Edison Co.*, 676 N.E.2d 328, 332 (Ill. App. Ct. 1997) ("Illinois courts have declined to apply the rule governing equitable awards of prejudgment interest to *cases at law* . . . .") (emphasis added). If the claim is substantively

---

[4] And, again, the Siragusas have made no attempt to pierce the veil of Collazo's LLC to hold Collazo responsible for his LLC's contractual obligations.

legal, or sounds in law, then an award of interest may only be made based on an applicable

contract or statute. *See Tri-G*, 856 N.E.2d at 412; *see also CIT Commc'ns Fin. Corp. v. Wes-*

*Tech Automation Sols., LLC*, No. 08 C 6458, 2011 WL 1807041, at *1 (N.D. Ill. May 11, 2011)

(quoting *Prignano v. Prignano*, 934 N.E.2d 89, 108 (Ill. App. Ct. 2010)).[5]

Historically, a claim for money damages based on intentional deceit was cognizable in

the common law courts. *Low v. Martin*, 18 Ill. 290, 291 (1857) ("The action on the case can be

maintained at common law, where one wrongfully, and through fraud and deceit, causes damage

to another."); *Weatherford*, 4 Ill. at 173–74 ("[F]raud or deceit, accompanied with damage, is a

meritorious cause of action."); *Pasley v Freeman*, 100 Eng. Rep. 450 (K.B. 1789). But courts of

equity also historically had jurisdiction over all cases involving fraud. *Truett v. Wainwright*, 9 Ill.

418, 421 (1847); *Owens v. Union Bank of Chicago*, 260 Ill. App. 595, 600 (1931).

That is, law courts and equity courts shared concurrent jurisdiction over claims based on

intentional fraud and deceit such as the fraud claim that the Siragusas are asserting here. *Wing v.*

*Sherrer*, 77 Ill. 200, 202 (1875); *Jamison v. Doe ex dem. Beaubien*, 4 Ill. 113, 115 (1841).

Importantly, however, a court of equity generally could not properly exercise jurisdiction *based*

*solely* on the presence of intentional fraud where the plaintiff was seeking *only money* as redress;

in such an instance, the case had to proceed in a court of common law. *Rubinelli v. Envoy Bldg.*

*Corp.*, 264 Ill. App. 94, 104 (1931) ("All he then had was a claim for damages on account of . . .

said alleged fraudulent representations, and this claim was cognizable only in a court of law . . .

."); *Ohlendorf v. Bennett*, 241 Ill. App. 537, 543 (1926); *Jack v. Blettner*, 148 Ill. App. 451, 455

(1909); *McCormick v. Page*, 96 Ill. App. 447, 450 (1901); *see also Chrysler Corp. v. Gunderson*,

396 N.E.2d 101, 102 (Ill. App. Ct. 1979); *Allen v. Illinois Mineral Co.*, 20 N.E.2d 898, 899–900

---

[5] The contractual/statutory analysis is contained above in Part II.A.

(Ill. App. Ct. 1939); *accord Powell v. City of Louisville*, 141 F. 960, 961–62 (7th Cir. 1905);

*Geel v. Valiquett*, 289 N.W. 306, 310 (Mich. 1939); *Kueper v. Pyramid Bond & Mortg. Corp.*,

166 A. 923, 923–24 (N.J. Ch. 1933). As described by the United States Supreme Court:

> Our decisions establish beyond peradventure that '[i]n *cases of fraud* or mistake, as
> under any other head of *chancery jurisdiction*, a court of the United States *will not
> sustain* a bill in equity to obtain only a *decree for the payment of money* by way of
> damages, when the like amount can be *recovered at law in an action sounding in
> tort* or for money had and received.'

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47–48 (1989) (emphasis added) (quoting *Buzard

v. Houston*, 119 U.S. 347, 352 (1886)).[6]

### C. Conclusion – Legal Prejudgment Interest at the Statutory Rate

Where only money damages are sought for intentional fraud and deceit, therefore, the

claim sounds in law and is substantively legal, not equitable. Here, the Siragusas seek only

money from Collazo due to his intentional fraud and deceit. Their claim against Collazo is a

substantively legal claim, not an equitable one, under Illinois law. Prejudgment interest may

therefore be awarded only based upon an applicable contract or statute. *Tri-G*, 856 N.E.2d at

412. As indicated above, there is no applicable contract between the Siragusas and Collazo.

There is an applicable statute, and it provides for interest at 5% *per annum*. 815 ILCS 205/2;

*Obermaier*, 470 N.E.2d at 1054; *Forrester*, 363 N.E.2d at 909–10; *Pfeffer*, 263 Ill. App. at 373;

*see also Schwitters*, 86 N.E. at 103. Interest should run from the time of the loan up until the time

of judgment. *See Commercial Nat. Bank of Peoria*, 476 N.E.2d at 815.

---

[6] Of course, the Court there was describing the historical contours of *federal* equity jurisdiction.
Nevertheless, the Court's description is consistent with Illinois courts' statements regarding the
law/equity divide in Illinois as that divide relates specifically to fraud claims.

### III.    Punitive Damages

The Siragusas seek punitive damages. Punitive damages are appropriate in a fraud action where the false representations are wantonly and designedly made. *Laughlin v. Hopkinson*, 126 N.E. 591, 595 (Ill. 1920).

> While deceit alone cannot support a punitive damage award, such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness.

*Home Sav. & Loan Ass'n of Joliet v. Schneider*, 483 N.E.2d 1225, 1228 (Ill. 1985) (internal quotations omitted).

Here, the court must isolate the deceit itself (the simple fraud). Then it must ask whether there is something more, whether Collazo's conduct amounts to gross fraud or whether the circumstances clearly show malice and willfulness. *See id.*

The deceit or simple fraud in this case was Collazo's knowing lie about repayment of the Chicago loans in 30-60 days from the sale of the unsold condo units, a lie on which the Siragusas relied when they lent their money in exchange for CG Development's note. *Collazo*, No. 12 B 44342, 2014 WL 866075, at *10 (Bankr. N.D. Ill. Mar. 5, 2014). Collazo knew that he was telling a lie, and he told it intending to deceive the Siragusas, who then detrimentally and justifiably relied on the lie in making the Arizona loan. *See id.* at *10–11. At the time Collazo told the Siragusas that the Chicago loans would be repaid in 30-60 days from the sale of the un-sold condo units, the condo units in question had already been transferred to new LLCs and, importantly, they had been completely encumbered by first and second mortgages. *Id.* at *10. Collazo knew of all of this when he made the statement. *Id.*

If that were all, punitive damages would be inappropriate. *Schneider*, 483 N.E.2d at 1228. But that's not all. From 2003 to 2005, Collazo himself was actually the person who caused the

9

unsold condo units to be transferred to new LLCs for no consideration and to be encumbered by mortgages. *See Collazo*, No. 12 B 44342, 2014 WL 866075, at *4, *10 ("All borrower-LLCs were now asset-less, and mortgages, and frequently, second mortgages, had been granted on all unsold condo units in order to secure a large amount of new lending. . . . Collazo and Goldman had already transferred the unsold units to non-borrower entities and had also granted first and second mortgages on the units in order to secure new debts."). That is, Collazo not only lied about repayment being possible in 30-60 days. He was the person who *had in fact made* repayment impossible. *Id.* at *11 ("Collazo took part in a series of transactions that rendered the borrower-LLCs incapable of repaying the Chicago loans."). Collazo not only lied (the simple fraud), he took an active role in creating the facts underlying the lie, and he did so over a long period of time (2–3 years).

The court is therefore satisfied that this case is not a case where the defendant made only an isolated false representation. Collazo's direct involvement in the facts underlying his false representation demonstrate that the fraud in this case is gross. *Schneider*, 483 N.E.2d at 1228. In other words, Collazo's false representation regarding repayment was wantonly and designedly made. *Id.*

Another way of putting it perhaps is to say that all of the circumstances leading up to and surrounding the false representation indicate that the fraud was designed to enrich Collazo without regard to its effect on the Siragusas. *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 511 (7th Cir. 1997). That is, by transferring the units to new LLCs and fully encumbering them in exchange for new loans (making full repayment of the Siragusas' Chicago loans out of the proceeds of the sale of those condos largely impossible and also rendering the entities legally obligated to the Siragusas on the notes completely judgment-proof), Collazo demonstrated that

10

he was perfectly fine with enriching his closely held companies (with new secured loans) while
ignoring the negative effects of that enrichment on the Siragusas. That same desire for
enrichment at the expense of the Siragusas was then present when he fraudulently induced them
to make the Arizona loan: Collazo was enriched through the flow of money to his company (CG
Development), and he did not care that the Siragusas would not have their Chicago loans repaid
in the manner in which he told the Siragusas those loans would be repaid. If Collazo had cared,
he wouldn't have lied to them about repayment from the condo-sale proceeds being possible in
30-60 days after having acted to make repayment on those terms impossible.

In short, the circumstances present in this case warrant an award of punitive damages
under Illinois law. The amount of the punitive damages may be based at least in part on the
amount of the incurred attorney's fees and costs. *See Hazelwood v. Illinois Cent. Gulf R.R.*, 450
N.E.2d 1199, 1206 (Ill. App. Ct. 1983); *Anvil Inv. Ltd. P'ship v. Thornhill Condominiums, Ltd.*,
407 N.E.2d 645, 654 (Ill. App. Ct. 1980). Attorney's fees cannot be awarded outright, however,
as part of a punitive damages award. *Int'l Union of Operating Engineers, Local 150 v. Lowe
Excavating Co.*, 870 N.E.2d 303, 324 (Ill. 2006). The goals of punishment and deterrence need to
be considered as well. *Id.* at 324–25.

Here, the materials in the record establish that known attorney's fees and costs are
roughly $250,000. Given that a lot of those fees/costs would have been incurred for work
unrelated to the specific $200,000 Arizona loan claim presently before the court (such as for
work performed on account of the actual fraud relating to Dana's $20,000 loan), it would be
inappropriate to consider *all* of those fees when fashioning a punitive damages award.
Nevertheless, assuming that the fees incurred specifically for work related to the $200,000
Arizona loan issue represent less than half of the total fees charged, and further considering the

11

goals of punishment and deterrence, a punitive damages award of $100,000, or half of the principal amount of the loan that Collazo induced by fraud, is appropriate in this case.

The court declines to award any additional amounts as punitive damages.

## IV.  Attorney's Fees (Separate from Punitive Damages)

The Siragusas also seek attorney's fees as part of their compensatory damages. Under the American Rule, a prevailing plaintiff is not entitled to attorney's fees absent an agreement or statute to the contrary. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015); *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 115 N.E.3d 923, 927 (Ill. 2018). The Siragsuas point to none. They argue that they are entitled to attorney's fees because Collazo's fraud caused them to incur the fees. Such an argument, if accepted, would turn the American Rule on its head.

Attorney's fees can be recovered as part of one's compensatory damages where the defendant's wrongdoing caused the plaintiff to have to litigate with third-parties. *Tolve v. Ogden Chrysler Plymouth, Inc.*, 755 N.E.2d 536, 541 (Ill. App. Ct. 2001). But the plaintiff cannot recover attorney's fees for having brought an action *against the wrongdoer*, even though the attorney's fees would not have been incurred but for that actor's wrongdoing. *See Ritter v. Ritter*, 46 N.E.2d 41, 44 (Ill. 1943).

Here, the Siragusas have incurred their attorney's fees litigating against Collazo, the wrongdoer. There is no contract or statute entitling the Siragusas to their attorney's fees. The attorney's fees are not recoverable as an element of the Siragusas' compensatory damages under Illinois law. No attorney's fees will be awarded to the Siragusas.

## Conclusion

Dana and Robert Joseph Siragusa are entitled to the return of the money they lent plus simple interest at the statutory rate. They are entitled to punitive damages in the amount of $100,000. Accordingly, judgment should be entered against Arturo Collazo and in favor of Robert Joseph Siragusa in an amount equal to $150,000 plus 5% *per annum* simple interest on $150,000, which should run from November of 2005 to the time that judgment is entered, with punitive damages of $75,000 added to that total amount. Judgment should also be entered against Arturo Collazo and in favor of Dana Siragusa in an amount equal to $50,000 plus 5% *per annum* simple interest on $50,000, which should run from November of 2005 to the time that judgment is entered, with punitive damages of $25,000 added to that total amount.

Enter:

Honorable Deborah L. Thorne
United States Bankruptcy Judge

Dated:  July 1, 2019

13